### THE HENRY CLAY.

### THE LINDA.

### THE UNDERWRITER.

#### (District Court, E. D. Pennsylvania. March 27, 1896.)

#### Nos. 125 and 126.

COLLISION—STEAMER WITH TOW—NARROW CHANNEL—PRESUMPTION.

A steamer which, while going down the Delaware river in the narrow and frequented channel near Wilmington, decided to cross from the western to the eastern side for the purpose of anchoring, and in so doing ran down the hindmost of two barges in tow of an ascending tug, *held* to have the burden of showing that she exercised great care in executing the maneuver, which was an extraordinary one; and, it appearing that she was wanting in such care, and that her lookout was negligent, *held*, that she was solely in fault, no specific fault being shown on the part of the tug or tow.

These were cross libels growing out of a collision in the Delaware river.

John G. Lamb, for the Henry Clay.

J. Parker Kirlin, for the Linda.

Henry R. Edmunds, for the Underwriter.

BUTLER, District Judge. As the steam tug Underwriter, with two large unloaded barges in tow, astern, (the hindmost being the Henry Clay) came up the Delaware river, off Wilmington, December 5th, last, near 4 o'clock p. m., she met the steamship Linda going down. The Linda had missed her course higher up, and gone west of the channel. A short distance above the point of meeting she resolved to go eastward across the channel, and anchor,—the western side being unsuited to the purpose. As she passed the Underwriter her course was nearly parallel to that vessel's, and at a safe distance. At or near that point however, she turned eastward, without observing either of the barges and passing very near the foremost of them, ran into the Clay, inflicting serious damage, and

sustaining some herself. The Clay libeled her and the Underwriter; and she libeled the Underwriter and Clay. Each charges the other with numerous faults. The Clay's charges against the Underwriter were not urged on the hearing; and the court was informed that they were preferred only because the "Linda" made and pressed them.

The testimony produced is contradictory,—the witnesses from the Underwriter and Clay agreeing substantially, while those from the Linda deny most of their statements. I will not discuss the evidence; but will simply state my conclusions or findings from it. I may say that I accept the statement of Robert Searson, a witness who saw the approach of the vessels and the collision, from the Wilmington wharf, as a truthful recital of the material facts. He is entirely disinterested, appears to be intelligent and reliable, is familiar with the locality and used to the water, though not a sailor. His statement agrees substantially with that of the witnesses from the Underwriter and the Clay.

Snow was falling, but not sufficient to obscure the vessels three-quarters of a mile off. Earlier in the afternoon more was falling, and the opportunity of seeing was not so good. The tide was ebb, and there was very little wind. The direct cause of the accident was the Linda's change of course across the channel, which at this point is narrow, and much frequented. The maneuver was extraordinary, and required the observance of great care. In executing it she ran the Clay down; and the burden is on her to show that she exercised such care, and that notwithstanding, the accident could not be avoided—by her. The testimony of her own witnesses considered alone, I think disproves that she exercised such care. She did not see the Underwriter, as they say, until within a length of her, nor the foremost barge until almost upon her; for which I cannot find any excuse, whatever. The weather did not prevent seeing these vessels at a safe distance; they were very large of their kind and the barges were light and high in the water, as was the tug also. Searson, from the rearward of the Linda, saw them distinctly at a distance of three-quarters of a mile. The Linda heard a whistle shortly before the collision, and heard it repeated a little later, (no doubt the Underwriter's signals, to which her witnesses testify) and paid no heed to it—supposing as her pilot says that it came from a vessel at anchor, or to her rear. From her own testimony the conclusion seems fully justifiable that her lookout was negligent, and that she was generally wanting in the care which the circumstances required. In the light of the testimony of Searson, and the witnesses from the Underwriter and Clay the conclusion is unavoidable.

Having found the Linda guilty of fault sufficient of itself to account for the collision, contributory fault should not be attributed to others without ample proof to warrant it. I do not find such proof, respecting either vessel charged. The Underwriter appears to have had a vigilant look-out, and to have seen the Linda as early as she should, and at an entirely safe distance. She properly kept her course, because, if the Linda did the same, as was to be expected,

there was no reason to apprehend danger. She gave all necessary signals, and all that are customary under similar circumstances; her tow was in plain view and she could not anticipate that it would not be seen. There is no reason to believe that other additional signals would have received more attention than those she sounded; which her pilot says were not heeded for the reason stated. The weather was not such as to forbid running at the time; other vessels were running, and the Linda herself had continued to run, to that point. I do not see any evidence that her speed was too great; I doubt whether it was greater than the Linda's; notwithstanding, with the tide against her, her command over her movements was greater than the Linda's was over hers. The make-up of the tow was not uncommon, and cannot be complained of. Had the hawsers been shorter it is not certain that the result would not have been worse.

I do not find anything to justify the charges against the Clay. She followed the tug, as was her duty, until in danger, and then sought to escape by change of course. It is probable the change was wise; if it was not, however, she is not responsible for a mistake made under such circumstances. Her charges against the Underwriter do not stand in the way of her claim to full damages from the Linda; nor are they available as evidence for the Linda against the Underwriter.

The Clay's libel must be sustained against the Linda, and dismissed as respects the Underwriter. The Linda's libel must be dismissed.